STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KEITH D. ELLISON (Cal. Bar No. 307070)
Assistant United States Attorney
International Narcotics, Money
 Laundering, and Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: 213-894-6920
     Facsimile: 213-894-0142
     E-mail: keith.ellison2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>HENRIK KIRAKOSIAN,<br><br>          Defendant. | No. CR 21-14-AB<br><br>PLEA AGREEMENT FOR DEFENDANT<br>HENRIK KIRAKOSIAN |

     1.   This constitutes the plea agreement between Henrik Kirakosian ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

DEFENDANT'S OBLIGATIONS

     2.   Defendant agrees to:

          a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts one and two

of the Information in <u>United States v. Henrik Kirakosian</u>, CR No. 21-14-AB, which charge defendant with Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(viii) and 3,4-methylenedioxymethamphetamine ("MDMA"), in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining count of the Information as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charge in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   At the time of sentencing, recommend that the Court apply a two level downward variance based on the factors set forth in 18 U.S.C. § 3553(a).

f.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 29 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

## NATURE OF THE OFFENSE

4.   Defendant understands that for defendant to be guilty of the crime charged in count one, that is, Conspiracy to Distribute and to Possess With Intent to Distribute Methamphetamine and MDMA, in violation of Title 21, United States Code, Sections 846 and

3

841(a)(1), the following must be true: (1) there was an agreement between two or more persons to distribute and possess with intent to distribute methamphetamine and MDMA; and (2) the defendant joined in the agreement knowing of its purpose and intending to help accomplish those purposes.

5. Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentences set forth below, the government must prove beyond a reasonable doubt that the conspiracy involved at least 50 grams of methamphetamine. Defendant admits that defendant's conspiracy involved at least 50 grams of methamphetamine in furtherance of the conspiracy and that this amount was reasonably foreseeable to defendant.

6. Defendant understands that for defendant to be guilty of the crime charged in count two, that is, conspiracy to launder monetary instruments, in violation of Title 18, United States Code, Section 1956(h), the following must be true: (1) there was an agreement between two or more persons to commit the crime of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), that is, to (a) conduct or attempt to conduct a financial transaction, (b) knowing that the property involved in such a financial transaction represents the proceeds of some form of unlawful activity, (c) which in fact involves the proceeds of specified unlawful activity, and (d) knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; and (2) defendant willfully joined in the agreement knowing of its unlawful purpose.

1

PENALTIES

2       7.   Defendant understands that the statutory maximum sentence

3  that the Court can impose for a violation of Title 21, United States

4  Code, Section 846, 841(a), (b)(1)(A)(viii) is: life imprisonment; a

5  lifetime period of supervised release; a fine of $10,000,000 or twice

6  the gross gain or gross loss resulting from the offense, whichever is

7  greatest; and a mandatory special assessment of $100.

8       8.   Defendant understands that the statutory maximum sentence

9  that the Court can impose for a violation of Title 18, United States

10 Code, Section 1956(h), is:  20 years' imprisonment; a three-year

11 period of supervised release; a fine of $500,000 or twice the gross

12 gain or gross loss resulting from the offense, whichever is greatest;

13 and a mandatory special assessment of $100.

14      9.   Defendant understands, therefore, that the total maximum

15 sentence for all offenses to which defendant is pleading guilty is:

16 life imprisonment; a lifetime period of supervised release; a fine of

17 $10,500,000 or twice the gross gain or gross loss resulting from the

18 offense, whichever is greatest; and a mandatory special assessment of

19 $200.

20      10.  Defendant understands that, absent a determination by the

21 Court that defendant's case satisfies the criteria set forth in 18

22 U.S.C. § 3553(f), the statutory mandatory minimum sentence that the

23 Court must impose for a violation of Title 21, United States Code,

24 Section 846, 841(a), (b)(1)(A)(viii) is: 10 years' imprisonment,

25 followed by a five-year period of supervised release, and a mandatory

26 special assessment of $100.

27      11.  Defendant understands that supervised release is a period

28 of time following imprisonment during which defendant will be subject

to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

12.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

13.  Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

14.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported

6

from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

15.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 17 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Conspiracy to Distribute and Possess With Intent to Distribute
Controlled Substances

Beginning on or about an unknown date and continuing until June 18, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant conspired with others, including Rane Melkom, Teresa McGrath, Mark Chavez, Co-conspirator 1 ("CC-1"),

7

Thomas Olayvar, and Matthew Ick (collectively, the "co-conspirators"), to knowingly and intentionally possess with the intent to distribute and to distribute methamphetamine, MDMA, and other controlled substances, including through darknet marketplaces. The darknet is a part of the internet that uses custom software and hidden networks superimposed on the architecture of the internet to provide greater anonymity to users and to obfuscate users and content.  Darknet marketplaces are commercial websites selling goods and services that operate on the darknet.  Darknet marketplace vendors often only accept digital currency, such as Bitcoin, in exchange for goods and services, due to the anonymity provided by such currencies.  Because of this anonymity, darknet marketplaces are commonly used to facilitate illegal transactions involving, amongst other things, drugs.

The conspiracy proceeded as follows: (1) Melkom and Chavez would obtain drugs, including methamphetamine and MDMA, from sources of supply; (2) Melkom and McGrath would store and package drugs, including methamphetamine and MDMA, to be distributed to customers who purchased those drugs on the dark web, at their residence in Sunland-Tujunga, California (the "Scoville Residence"); (3) defendant would assist Melkom, Chavez, McGrath, and others with the packaging of drugs, including methamphetamine and MDMA, at the Scoville Residence for distribution by U.S. mail to customers who ordered those drugs on the dark web; (4) McGrath would purchase money orders from U.S. post offices to pay other co-conspirators, including defendant, for assisting with the packaging of drugs at the Scoville Residence; (5) Co-conspirators, including McGrath, would mail parcels containing drugs, including methamphetamine and MDMA, by U.S. mail to

customers who ordered those drugs on the dark web; (6) CC-1 would receive Bitcoin in exchange for the drugs sold on the dark web and distribute those proceeds to co-conspirators, including Melkom; (7) defendant, Melkom, and others would arrange and attempt to arrange to obtain proceeds from the sale of drugs on the dark web, in the form of digital currency, from CC-1.

In furtherance of the conspiracy, and to accomplish its objects defendant and his co-conspirators committed the following acts:

- On February 3, 2020, at the Scoville residence, defendant, Melkom, and Chavez, loaded packages containing drugs into a vehicle for transportation for shipment by U.S. mail to customers who ordered those drugs on the dark web.

- On February 4, 2020, at the Scoville residence, defendant and Melkom prepared packages containing drugs intended for shipment by U.S. mail to customers who ordered those drugs on the dark web.

- On February 5, 2020, defendant assisted Melkom and Chavez track a lost package expected to contain proceeds from the sale of drugs on the dark web.

- On February 8, 2020, at the Scoville residence, defendant and Melkom prepared and packaged drugs for shipment by U.S. mail to customers who ordered those drugs on the dark web.

- On February 11, 2020, at the Scoville Residence, Melkom and McGrath possessed, with intent to distribute, approximately 22.183 kilograms of methamphetamine and 6.701 kilograms of MDMA, including packaged drugs ready for distribution by U.S. mail.

- On February 15, 2020, using coded language in a telephone conversation, defendant discussed and agreed with Melkom to

attempt to locate and contact CC-1 to obtain proceeds from the sale of drugs on the dark web in the possession of CC-1.  Melkom told defendant that CC-1 had a complete one, referring to the more than $1 million in drug proceeds CC-1 possessed in digital currency.

- On February 17, 2020, defendant attempted to access proceeds from the sale of drugs on the dark web held in digital currency accounts to prevent law enforcement identification of the accounts and seizure of the proceeds.

- On May 19, 2020, law enforcement officers searched CC-1's residence.  CC-1 possessed approximately 60 digital currency wallets containing approximately $1.45 million in drug proceeds at the time of the search.  CC-1 possessed the digital currency in furtherance of the conspiracy.

- On June 13, 2020, using coded language in a series of text messages, defendant contacted by electronic message an electronic communications account of CC-1, which was, in fact, an account controlled by law enforcement, to obtain proceeds from the sale of drugs on the dark web in the possession of CC-1, on behalf of Melkom.

- On June 13, 2020, using coded language in a series of text messages, defendant attempted to explain to CC-1 by electronic messages to an electronic communications account of CC-1, which was, in fact, an account controlled by law enforcement, how he would receive and launder proceeds from the sale of drugs on the dark web in the possession of CC-1, on behalf of Melkom.

On June 18, 2020, law enforcement officers searched defendant's residence and found the phone defendant used to send the messages intended for CC-1 described above.

Conspiracy to Launder Money

In connection with the drug trafficking activities described above, beginning on or after February 11, 2020, and continuing until on or about June 18, 2020, defendant conspired with others, including Melkom and CC-1, to knowingly conduct financial transactions knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, which, in fact, involved the proceeds of specific unlawful activity, namely, the unlawful drug trafficking described above.  The purpose of financial transactions was to conceal the source and origin of the money, and defendant knowingly joined in that purpose.

The conspiracy proceeded as follows: (1) Melkom and CC-1 would collect and possess digital currency received as proceeds from the sale of drugs on the dark web; (2) after Melkom was incarcerated, defendant would attempt to access digital currency accounts containing the proceeds from the sale of drugs on the dark web on behalf of Melkom; (3) after Melkom was incarcerated, defendant would arrange and attempt to arrange to obtain proceeds from the sale of drugs on the dark web, in the form of digital currency, in the possession of CC-1, on behalf of Melkom; and (4) defendant would exchange digital currency into fiat currency to be used for his own use and the use of others, including Melkom.

In furtherance of the conspiracy and to accomplish the object of the conspiracy, defendant and his co-conspirators committed the acts described above.

1

SENTENCING FACTORS

2     16.  Defendant understands that in determining defendant's

3 sentence the Court is required to calculate the applicable Sentencing

4 Guidelines range and to consider that range, possible departures

5 under the Sentencing Guidelines, and the other sentencing factors set

6 forth in 18 U.S.C. § 3553(a).  Defendant understands that the

7 Sentencing Guidelines are advisory only, that defendant cannot have

8 any expectation of receiving a sentence within the calculated

9 Sentencing Guidelines range, and that after considering the

10 Sentencing Guidelines and the other § 3553(a) factors, the Court will

11 be free to exercise its discretion to impose any sentence it finds

12 appropriate between the mandatory minimum and the maximum set by

13 statute for the crime of conviction.

14     17.  Defendant and the USAO agree to the following applicable

15 Sentencing Guidelines factors:

| Base Offense Level: | 34 | U.S.S.G. §§ 2S1.1(a)(1), 2D1.1(a)(5), (c)(1) |
|---|---|---|
| 1956 Conviction | +2 | U.S.S.G. § 2S1.1(b)(2)(B) |
| Role Adjustment | -2 | U.S.S.G. § 3B1.2(b) |

Defendant and the USAO reserve the right to argue that additional

specific offense characteristics, adjustments, and departures under

the Sentencing Guidelines are appropriate.  Defendant understands

that defendant's offense level could be increased if defendant is a

career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's

offense level is so altered, defendant and the USAO will not be bound

by the agreement to Sentencing Guideline factors set forth above.

18.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20.   Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.   The right to persist in a plea of not guilty.

    b.   The right to a speedy and public trial by jury.

    c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

    d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e.   The right to confront and cross-examine witnesses against defendant.

    f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

    g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

21.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

22.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 29 and the criminal history category calculated by the Court, subject to any applicable mandatory minimum, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended

General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

23.  The USAO agrees that, provided (a) all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 29 and the criminal history category calculated by the Court, subject to any applicable mandatory minimum, the USAO gives up its right to appeal any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEAS</u>

24.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

1

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

2     25. Defendant agrees that if any count of conviction is

3 vacated, reversed, or set aside, the USAO may: (a) ask the Court to

4 resentence defendant on any remaining count of conviction, with both

5 the USAO and defendant being released from any stipulations regarding

6 sentencing contained in this agreement, (b) ask the Court to void the

7 entire plea agreement and vacate defendant's guilty plea on any

8 remaining count of conviction, with both the USAO and defendant being

9 released from all their obligations under this agreement, or

10 (c) leave defendant's remaining conviction, sentence, and plea

11 agreement intact. Defendant agrees that the choice among these three

12 options rests in the exclusive discretion of the USAO.

13

## EFFECTIVE DATE OF AGREEMENT

14     26. This agreement is effective upon signature and execution of

15 all required certifications by defendant, defendant's counsel, and an

16 Assistant United States Attorney.

17

## BREACH OF AGREEMENT

18     27. Defendant agrees that if defendant, at any time after the

19 signature of this agreement and execution of all required

20 certifications by defendant, defendant's counsel, and an Assistant

21 United States Attorney, knowingly violates or fails to perform any of

22 defendant's obligations under this agreement ("a breach"), the USAO

23 may declare this agreement breached. All of defendant's obligations

24 are material, a single breach of this agreement is sufficient for the

25 USAO to declare a breach, and defendant shall not be deemed to have

26 cured a breach without the express agreement of the USAO in writing.

27 If the USAO declares this agreement breached, and the Court finds

28 such a breach to have occurred, then: (a) if defendant has previously

entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

28.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

29.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

31.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to

1  fulfill all defendant's obligations under this agreement.  Defendant
2  understands that no one -- not the prosecutor, defendant's attorney,
3  or the Court -- can make a binding prediction or promise regarding
4  the sentence defendant will receive, except that it will be between
5  the statutory mandatory minimum and the statutory maximum.

6                        NO ADDITIONAL AGREEMENTS

7       32.  Defendant understands that, except as set forth herein,
8  there are no promises, understandings, or agreements between the USAO
9  and defendant or defendant's attorney, and that no additional
10  promise, understanding, or agreement may be entered into unless in a
11  writing signed by all parties or on the record in court.

12            PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

13       33.  The parties agree that this agreement will be considered
14  part of the record of defendant's guilty plea hearing as if the
15  entire agreement had been read into the record of the proceeding.

16  AGREED AND ACCEPTED

17  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
18  CALIFORNIA

19  STEPHANIE S. CHRISTENSEN
    Acting United States Attorney

20

21  _____        7/17/2022
    KEITH D. ELLISON                       Date
22  Assistant United States Attorney

23                                         7-15-22
    _____       _____
24  HENRIK KIRAKOSIAN                      Date
    Defendant

25  _____       7/ 15/22
    DIANE C. BASS                          Date
26  Attorney for Defendant
    HENRIK KIRAKOSIAN
27

28

                              19

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          _____
HENRIK KIRAKOSIAN                         7-15-22
Defendant                                 Date

1    <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2        I am Henrik Kirakosian's attorney.  I have carefully and

3    thoroughly discussed every part of this agreement with my client.

4    Further, I have fully advised my client of his rights, of possible

5    pretrial motions that might be filed, of possible defenses that might

6    be asserted either prior to or at trial, of the sentencing factors

7    set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8    provisions, and of the consequences of entering into this agreement.

9    To my knowledge: no promises, inducements, or representations of any

10   kind have been made to my client other than those contained in this

11   agreement; no one has threatened or forced my client in any way to

12   enter into this agreement; my client's decision to enter into this

13   agreement is informed and voluntary; and the factual basis set forth

14   in this agreement is sufficient to support my client's entry of

15   guilty pleas pursuant to this agreement.

16   _____    7/15/20

17   DIANE C. BASS                       Date
     Attorney for Defendant
18   HENRIK KIRAKOSIAN